IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| R&O CONSTRUCTION COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MBA GENERAL CONTRACTING, LLC and CORY MARTIN,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ATTORNEY FEE CLAIM AND GRANTING REQUEST FOR AN ENLARGEMENT OF TIME TO FILE ANSWER<br><br>Civil No.: 1:18-cv-00042-JNP-PMW<br><br>District Judge Jill N. Parrish |

Before the court is a motion brought by defendants MBA General Contracting, LLC and Cory Martin (collectively, MBA) to dismiss plaintiff R&O Construction Company's (R&O's) fourth cause of action for an award of attorney fees. [Docket 8]. The court GRANTS the motion and dismisses the fourth cause of action with prejudice.

## BACKGROUND

R&O, a general contractor, entered into a construction contract with Utah State University Research Foundation. Under the construction contract, R&O agreed to act as the general contractor for a construction project on Utah State University's campus in Logan, Utah.

R&O entered into two contracts with a subcontractor, MBA. The first was entitled the Master Subcontract Agreement (Master Agreement), which outlined the general duties and obligations between the parties. The second was entitled the Work Authorization Document, which delineated the specific duties and obligations of the parties related to the Utah State University project. Under the Work Authorization Document, MBA agreed to perform concrete work as a subcontractor for the construction project.

R&O alleges that MBA breached the contracts by failing to meet required quality standards and by failing to complete the work on time. As a result of the alleged failures to perform under the contracts, R&O gave MBA a notice to cure the deficiencies. R&O alleges that MBA's response did not adequately address its demands. As a result, R&O withheld payments. MBA then notified R&O that it would cease work on the construction project until payments were made in full. R&O hired replacement subcontractors to complete the work.

R&O sued MBA. In its complaint, R&O asserts various causes of action arising from MBA's alleged failure to perform under the contracts. R&O's fourth cause of action is for an award of attorney fees allegedly provided for under the Master Agreement. MBA filed a motion to dismiss the attorney fee claim, arguing that the Master Agreement does not permit an attorney fee award under the facts of this case.

## LEGAL STANDARD

Dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where the plaintiff fails to state a claim upon which relief can be granted. In this case, MBA argues that R&O cannot state a contractual claim for attorney fees because the language of the Master Agreement does allow for an award of fees. The Master Agreement provides that it shall be interpreted under the laws of the State of Utah. Because the interpretation of this contract does not involve extrinsic evidence, it is a legal question for the court. *See Peterson v. Sunrider Corp.*, 48 P.3d 918, 924 (Utah 2002).

## ANALYSIS

R&O argues that two separate provisions of the Master Agreement permit an award of attorney fees in its favor: (1) the indemnification provision (Section 3.D) and (2) the failure-to-perform provision (Section 2.E). The court addresses each of these provisions in turn.

2

## I. THE INDEMNIFICATION PROVISION

The Master Agreement contains an indemnification provision, which states:

> <u>Indemnification</u>. . . . To the fullest extent permitted by law, Subcontractor [MBA] shall indemnify, defend and hold harmless Contractor [R&O] and Owner, and their agents and employees against any and all claims, demands, damages, liabilities, expenses and reasonable attorney fees incurred by Contractor and/or Owner and arising out of or in any way related to the performance of Subcontractor's obligations under the applicable Work Authorization Document . . . .

R&O argues that this provision requires MBA to indemnify it by paying any attorney fees that it incurs in this lawsuit because the action arises out of MBA's obligations under the Work Authorization Document.[1]

This court faced a similar claim for attorney fees based on a comparable indemnification provision in *Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1103, 1114–16 (D. Utah 2005). The indemnification provision in the *Canopy* case provided: "[Symantec] agrees to indemnify, hold harmless, and defend [Canopy] from all claims, damages, costs and expenses (including reasonable attorneys' fees) that arise from . . . [Symantec's] breach of any of the terms of this Agreement." *Id.* at 1114. The plaintiff in that case, Canopy, argued that the indemnification provision required the defendant, Symantec, to reimburse it for attorney fees incurred in a first-party lawsuit between them. *Id.* at 1115. Judge Kimball disagreed. Focusing on the indemnification provision's requirements that defendant Symantec both "indemnify" and "defend" plaintiff Canopy, Judge

---

[1] The court notes that under R&O's interpretation of this provision, MBA would be liable for R&O's attorney fees regardless of who prevails in the lawsuit. This provision contains no prevailing-party condition. Thus, win, lose, or draw, MBA would be on the hook for R&O's attorney fees in this lawsuit under R&O's reading.

3

Kimball ruled that the indemnification provision bound Symantec only to indemnify and defend Canopy in a lawsuit brought by a third party:

> [T]he parties' use of the term "defend" necessarily narrows the sweep of the indemnifying language. The use of the word "defend" indicates that the parties intended the provision to apply only to third-party claims because the word would have no effect in a direct action between the parties. Obviously, in a direct action between the parties, neither party would be interested in tendering its defense or being defended by the other party.

*Id.* Judge Kimball ruled, therefore, that "construing the indemnification clause 'as pertaining only to third-party suits affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect.'" *Id.* at 1116 (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 200 (2d Cir. 2003), which similarly held that an indemnification clause was confined to third-party claims and did not permit an attorney fee award in a first-party lawsuit); *accord Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989) ("To extend the indemnification clause to require defendant to reimburse plaintiff for attorney's fees in the breach of contract action against defendant would render these provisions meaningless because the requirement of notice and assumption of the defense has no logical application to a suit between the parties.").

While *Canopy* is not controlling authority, the court finds its reasoning persuasive.[2] R&O's reading of the Master Agreement would require MBA to simultaneously indemnify R&O and

---

[2] The court disagrees with one portion of the reasoning in the *Canopy* ruling. The *Canopy* court concluded that Utah's "rule of strict construction when interpreting an indemnity agreement" supported its finding that the indemnity provision at issue in that case did not permit an attorney fee award in a first-party lawsuit between the two parties bound by the provision. 395 F. Supp. 2d at 1114–15. Under this rule, "[a]greements by which one person obtains another person's agreement to indemnify him from the results of his own negligence are not favorites of the law, and are strictly construed against the indemnitee." *Shell Oil Co. v. Brinkerhoff-Signal Drilling Co.*,

4

defend it in this case. It is illogical to interpret the indemnification provision to require MBA to defend R&O in an action between them. In order to give meaning to MBA's obligations to both indemnify and defend R&O, the court interprets the indemnification provision to apply only to third-party claims asserted against R&O. Thus, the indemnification provision does not permit an award of attorney fees in this case.

## II. THE FAILURE-TO-PERFORM PROVISION

R&O also argues that it is entitled to attorney fees under the failure-to-perform provision of the Master Agreement. This provision states:

> If Subcontractor fails to perform any of the obligations of this Agreement or the applicable Work Authorization Document, . . . then Contractor may give Subcontractor a 3-business day Notice to cure such failure and or default. If Subcontractor fails to cure such failure/default within 3-business days of such Notice, Contractor may . . . . complete the Work by whatever reasonable method Contractor deems expedient. Subcontractor shall not be entitled to receive any further payment until the Work required by the applicable Work Authorization Document is fully completed and accepted by the Owner and the Architect (if applicable); and *at such time, if the unpaid balance of the amount to be paid hereunder exceeds Contractor's cost (including overhead, profits and attorneys* [sic] *fees)*, such excess shall then be paid by Contractor to Subcontractor. But if Contractor's cost exceeds the unpaid balance, Subcontractor shall promptly pay the difference to Contractor.

---

658 P.2d 1187, 1189 (Utah 1983) (citations omitted). But in this case, R&O is not attempting to use the indemnification provision to force MBA to pay for damages that R&O caused to a third party. Instead, R&O argues that the indemnification provision at issue here also operates as a fee-shifting provision in a first-party lawsuit between the parties to the contract. Thus, the policy considerations that animate the strict construction rule for indemnification provisions do not apply here. Nor have the parties pointed to a similar strict construction rule for fee-shifting provisions. The court, therefore, concludes that Utah's strict construction rule for indemnification provisions does not apply. Even absent strict construction, though, the court determines that the ultimate conclusion in the *Canopy* case is sound.

5

(Emphasis added). R&O argues that under this provision, it is entitled to attorney fees incurred pursuing recovery of its damages.

The court disagrees. The failure-to-perform provision does mention attorney fees, but not in the context of a lawsuit between R&O and MBA. This provision discusses R&O's options in the event that MBA fails to perform. It provides that R&O may cease paying MBA and complete the work itself. The failure-to-perform provision states that MBA is not entitled to payment until MBA's work is fully completed and has been accepted by R&O. "[A]t such time" when the work has been accepted, R&O must calculate two sums: the unpaid balance owed to MBA and R&O's costs to complete the work, including attorney fees. If the unpaid balance exceeds R&O's completion costs, R&O must pay the difference between the two sums to MBA. But if the completion costs exceed the unpaid balance, MBA must pay R&O the difference.

The language "at such time" indicates that this calculation must be performed at a specific point in time—the date when the work has been completed and accepted. At this time, any attorney fees incurred by R&O to complete the work are included in its costs sum. The failure-to-perform provision does not allow an award for attorney fees in a subsequent action between MBA and R&O long after the work has been completed and accepted. Moreover, R&O does not allege that the attorney fees it seeks are related to its costs to complete MBA's work. Therefore, the court finds that this provision does not permit an award of attorney fees incurred in this lawsuit.

In short, if the parties had wished to include a traditional fee-shifting provision for a potential lawsuit between R&O and MBA, they could have done so. They did not. And R&O's attempts to shoehorn such a clause into the indemnification provision and the failure-to-perform provision are unpersuasive. Neither of these provisions permit an attorney fee award in this litigation. Accordingly, the court dismisses the fourth cause of action for attorney fees.

### III. ENLARGEMENT OF TIME TO ANSWER

MBA also requests an enlargement of time to answer the remainder of R&O's complaint and to assert counterclaims. The court GRANTS the request. MBA shall have 14 days from the date of this order to file an answer and any counterclaims.

### CONCLUSION

The court GRANTS MBA's motion to dismiss R&O's Fourth Cause of Action. [Docket 8]. Dismissal is with prejudice. The court also GRANTS MBA's request for an enlargement of time to answer R&O's complaint. MBA shall have until April 4, 1019 to file an answer to R&O's complaint and assert any counterclaims.

Signed March 21, 2019.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge